The next here argument in Citizens' Equity First Credit Union v. San Diego County Credit Union Your Honor, just let me know when you're ready All right, we'll let the other side get settled first All right, Mr. Dabney, you can begin  James W. Dabney, Hughes, Hubbard & Reed, LLP, for the defendant, propellant, CEFCU I'd like to reserve five minutes' time for rebuttal Please watch the clock Thank you In May 2017, CEFCU petitioned the United States Patent and Trademark Office, the USPTO, for cancellation of a standard character registration that the USPTO had recorded on its principal register in 2014 Excuse me, forgive me for interrupting, I'm having a hard time hearing you I hear you not at all Okay, well let me see if I can increase the volume here Is this any better? Oh, that was better If you just keep your voice up Is that any better? Okay, thank you I brought my microphone much closer All right The subject registration had nationwide legal effect and its effect on CEFCU was entirely independent of where the registrant, SDCCU, happened to be located In May 2018, not long after SDCCU counsel had received from CEFCU, under the protective order in the cancellation case, a non-public trademark availability search report that CEFCU had obtained in August 2010, that same SDCCU counsel signed and filed the complaint that commenced the present action SDCCU's original complaint alleged that CEFCU's petitioning of the USPTO for relief constituted unfair competition under both 15 U.S.C. section 1125 and California state statutory and common law SDCCU alleged that CEFCU committed fraud and violated 15 U.S.C. section 1120 when CEFCU filed an application for registration of its own service mark in 2010 SDCCU alleged that CEFCU's petitioning of the USPTO for relief exposed CEFCU not just to suit in the district where the registrant happened to be located, but to damages in the form of the attorney's fees that SDCCU had incurred in defending the USPTO cancellation case up to that time The district court was looking at other evidence as well though. It was looking at deposition testimony by CEFCU officers suggesting that it was just a matter of time before CEFCU would move into San Diego's area and that there was likelihood of confusion and the like. Why doesn't that change the picture? Well, for several reasons. What Your Honor is adverting to is the theory on which the district court went forward, which was a theory that SDCCU purportedly apprehended future legal liability to CEFCU arising from CEFCU injury that supposedly could support CEFCU claims for service mark infringement. I want to repeat that. The theory of injury that had this case go forward was a theory that SDCCU purportedly apprehended injury to CEFCU that supposedly could support a CEFCU claim against SDCCU for infringement. And that those non-existent claims, not pleaded in this case, not set forth in any correspondence that is of record, were said to have been brought within the Article 3 jurisdiction of the court by the allegation in SDCCU's complaint. And I'll just read it. It's in 2 ER 283 paragraph 53, quote, as a result of CEFCU's actions and allegations and the CEFCU petition and motion for leave to amend its petition for cancellation, CEFCU, SDCCU has a reasonable apprehension that CEFCU will file a lawsuit against SDCCU, alleging that SDCCU's use of the SDCCU mark infringes the CEFCU mark. So our standard under Cheese Bro, I don't really know how to pronounce that case. It seems extremely broad. Why isn't that enough under that case? Well, there are four principles of federal court jurisdiction that are controlling here. And even assuming that the legal standard in Cheese Bro survives the Clapper and more recent Supreme Court decisions construing threatened injury, including this court's Milan decision in 2021, there are four principles why the district court's judgments here must be reversed. First, first, the party invoking federal court jurisdiction bears the burden of proving facts establishing the existence of jurisdiction. Second, federal court jurisdiction must be shown to exist at all stages of a case. Third, and this is probably the third and the fourth points are probably most pertinent to what Your Honor is referring to, when jurisdictional facts are disputed as they were here, those facts must be proved either at an evidentiary hearing pretrial or at trial and a district court must make findings of jurisdictional fact in accordance with federal rule of civil procedure 52A. Fourth, and equally important, especially with respect to the Cheese Bro bond, under current precedent, in order for future legal liability for a defendant's injury to qualify as Article III injury in fact, the liability must be imminent and certainly impending when jurisdiction is exercised. And in this case, that legal standard was not met for either of two fundamental reasons. First, at the time the judgments were entered in this case, SDCCU's jurisdictional allegations were denied and disputed. The district court in this case never held any evidentiary hearing on SDCCU's disputed jurisdictional allegations. Did you request one, sir? Did you request one? The district court never, there was no request for a hearing. The district court canceled the hearing. There was a hearing set and the district court sua sponte canceled the hearing the day before. I mean, I was all watching the forward hearings in Congress ready to go out for the hearing and the district court abruptly canceled at the last minute. So it was set for hearing. We did request a hearing and the district court decided both motions without hearing. So yes, we did request a hearing. The fundamental flaw in SDCCU's position of this court is that their brief erroneously and misleadingly cites as if it were admitted evidence, hearsay statements made or cited in orders that the district court issued at the pleading stage of this case. Contrary to SDCCU's appellate argument, pleading stage orders and pleading stage filings, including SDCCU complaint allegations, are hearsay and was never proffered or admitted in evidence and are no basis on which this court could affirm the appeal judgments. If you don't mind, if I could just move you back a step. So it wasn't clear to me whether your client requested an evidentiary hearing on the subject matter jurisdiction issue. You said first you said no and then you said yes. So could you just clarify and tell me where in the record I should look for that? The way Judge Curiel's procedures work is that you have to request a hearing date and that's put in your motion and the hearing date is set forth on the face of the motion in the case. And then we were all prepared to go out and argue the motion and Judge Curiel canceled the hearing on the day before the motions were scheduled to be heard. We're talking about your motion to dismiss the first four counts of Sandy Agus' complaint for lack of Article 3 subject matter jurisdiction. And so was that an evidentiary hearing? Was that an oral argument? Can I tell that from the pleading itself? That's exactly right. When you make a pre-answer motion to dismiss under 12b6 or 12b1, the district court has the option. It can either decide the motion on the papers, which is what happened in this case, or the district court can schedule an evidentiary hearing and hold a little trial ahead of the main trial on the disputed jurisdictional allegations. I think Judge Christian's question was, and did you move for an evidentiary hearing? The motion was, I mean, there was oral argument set. We did not, after the court denied the motion on the papers, the court said on the face of its orders, it considers oral argument to be unnecessary and it wasn't going to decide the motion on the papers. The district court in this case issued orders which cited allegations of the complaint and cited filed papers and did not in any way purport to make findings of fact under Rule 52. The allegations in question were not even answered yet. There had been no discovery on it yet, and that came on later in the case. After the court denied Sefkew's motion to dismiss, Sefkew denied the allegations that the judge quoted in its order. The judge's order quoted paragraph 47 of Sefkew's original complaint, which was the one that I just read to the court, and that allegation was denied by Sefkew. So when it came time for the judge to decide the merits of the case, Sefkew's, SDCCU's jurisdictional allegations were denied and disputed. So Sefkew at that point, SDCCU at that point, had to prove, and its position is just like that of the litigants in the KVOS and in the McNutt cases that we cited, where jurisdictional allegations are denied. In that case, it was the amount in controversy, but it would be the same whether it was a personal jurisdiction issue or an Article III jurisdiction issue. Where the jurisdictional allegations are denied, the proponent bears the burden of proving them, and that did not happen in this case, and it wasn't an accident. These allegations that were made in their second amended complaint were made two years after the case was filed. It was in 2020, and the SDCCU senior officer testimony that we quoted on pages seven and eight of our brief shows that there was no way that SDCCU could show that in 2020 or 2021, it then reasonably apprehended future legal liability to Sefkew for injury that Sefkew had never said it had. So the problem here is that the district court conflated what is sufficient to defeat a pre-answer motion to dismiss on the papers and what a plaintiff must show who comes in and asks for a judgment on the merits. That simply was an error, and there's simply no evidence that was admitted at trial that supports the appeal judgment of invalidity, and the summary judgment record does not include any evidence that purports to establish beyond genuine dispute that there was injury in fact that would support an exercise of Article III jurisdiction. And how did you tee up this issue for trial? Did you move? I'm not sure if everyone's silent. Are you saying that the district court should have sua sponte asked the San Diego to raise evidence, or how did you tee this up? The way we teed it up is when at the trial stage, when SDCCU announced that it intended to call no witnesses at trial to carry its own burden of proof on jurisdiction, Sefkew moved to dismiss the case on the ground that SDCCU had announced that it was not intending to proffer any evidence in support of its own allegations. So where can I find that in the record? So this was at trial, at the trial stage? Yes, at the trial stage, we filed a motion. We cite this on, we cite the motion on page... Are you referring to the colloquy at, I think it's at ER, about 74 to 76 at the beginning of the trial? Is that the colloquy you're referring to? No, the motion that was filed is in 4 ER 63443, and we cite it on page 15 of the first, the first brief on cross appeal. Is that the motion? That was Sefkew's motion to dismiss after SDCCU announced that it did not intend to substantiate its jurisdictional allegations at trial. There was a second motion relevant to jurisdiction, which was SDCCU filed a motion in Lemonade to preclude Sefkew from proffering SDCCU senior officer testimony that tended to show that there was no future liability imminent or certainly impending in 2021. You just have a few seconds left. Do you want to save that for rebuttal? Oh, yes, I'll save my time for rebuttal. Thank you. Okay. We'll hear from the other side. Good morning, Your Honors. May it please the court. Martin Bader on behalf of the appellees and cross appellant, San Diego County Credit Union. I would like to address subject matter jurisdiction, which was what was just being discussed. And I'd also try to like to have a few minutes to discuss our cross appeal. You'll have to speak up louder, sir, if you want me to hear the mic on. Yeah, there we go. So with respect to subject matter jurisdiction in a declaratory judgment action in determining whether there's subject matter jurisdiction in the first instance, the court looks to whether there's a case in controversy and under the case, whether or not there is a case in controversy between the parties. And in this jurisdiction, that is whether there is a real and reasonable apprehension of a lawsuit being filed. Does opposing counsel suggest that she's may not survive current Supreme Court case law and references Clapper and other cases? What's your take on that? I think I think here the standard has been the same for a very long time, and it's not SEFCU's injury that we're talking about. I know the court mentioned some of that testimony in its order, but it's whether San Diego County Credit Union had a real and reasonable apprehension of the lawsuit. And therefore, the injury we're talking about is the fear of being sued, right, that hanging over our client, call it the sword of Damocles or whatever it is. And it's it puts us in a position where my client has to either proceed with ceasing use of its trademarks that it's been alleged to infringe or it needs to go to court and ask for relief that it does not infringe and that the marks are invalid. And that's the that's the injury. I don't think I don't think those cases. Clapper talks about imminence and the threat is imminent and certain to occur. And Chesebrough seems to have a much, much broader picture. Do you think there was enough evidence to show the imminence of this action? Because it seemed to say, well, it could happen at some point. Well, here, absolutely there was. And and under the Chesebrough case, the I mean, I think under either standard here, what you have is SEFCU coming in to oppose or cancel our registered mark. And all of the allegations throughout that cancellation are not simply about the registered mark. They were allegations of trademark infringement indisputably in the court at the district court as a factual matter, found that the cancellation proceeding, the amended cancellation proceeding, the testimony from the witness, the 36 witness at the cancellation proceeding and also in the discovery all allege the elements of trademark infringement, not simply that they were just trying to cancel the mark. So these are all I mean, once once you have that, and I'd also like to step back and talk about the procedure that happened with respect to the court finding subject matter jurisdiction. This was not a facial attack on the complaint. SEFCU filed a motion in that motion. It said it was making a factual attack. The court in its order also acknowledged that it was a factual attack. There was tons of evidence that was attached to the motion that was not part of the complaint. And at that stage in the case, the court made a finding under the preponderance of evidence standard that subject matter jurisdiction was met. Now, under Ninth Circuit authority, once that has been done, the court does not need to go back and revisit the question of subject matter jurisdiction again in the case. The case law is clear that the court can determine subject matter jurisdiction at any point in the proceedings. I ask you this, which which disturbs me, so that at some point the district court granted summary judgment in favor of your client saying that San Diego was not infringing on SEFCU's registered or common law mark. Why doesn't this moot San Diego's claim that SEFCU's common law mark was invalid? For two reasons. Number one, I think the court retains discretion whether or not to decide those extra claims. And I think of the patent context, if there's a finding of if you file a declaratory judgment for non-infringement and invalidity and non-infringement is proven, the district court can in its discretion decide the invalidity claim as well. It doesn't have to. Isn't that an advisory opinion at that point? Because there's no longer any injury. It's just you can't randomly say that somebody's mark is invalid. Well, except for here, it's not random, right? We have, and this gets at issues in the cross appeal as well. What would happen, so if SEFCU's common law mark were valid, given the district court's ruling that San Diego's marks were not infringing, what difference, how would San Diego potentially be injured in the future or at that point? Well, remember, there's a pending cancellation proceeding. Whether or not this mark is valid, the common law mark, is a basis to try and cancel our mark at the PTO. So there was a very real kind of ongoing dispute with respect to the validity of that mark. It was not simply that once we don't infringe that there's no longer any dispute between the party here. The cancellation proceeding is still pending today, and they, SEFCU, has filed a motion to amend to cancel our mark. And the basis for that motion is the common law mark, not anything better. So there's still a very- Because I'm not familiar with TTAB procedures. Is that a proper basis for canceling a mark, the trademark that's an infringing mark? And if so, wouldn't the district court's decision on summary judgment have issue preclusion or claim preclusion effect? So absolutely, yes. A registered mark can be canceled in view of a prior non-registered mark's use. So in terms of is it- now, here we would dispute that they could, but of course, as a legal matter, that one can cancel a registered mark based on earlier prior use of a non-registered mark. If the district court's decision that San Diego's marks were not infringing, why wouldn't that eliminate that argument before the TTAB? Well, I don't- I mean, one, we would argue it's very persuasive, but I don't think- I think the precedent is that it's not necessarily binding on- binding. And there's- right? There is a difference between infringement and registration. It's a slightly different standard, so the TTAB can go back and look at the same issue. It doesn't preclude it. I would like to talk about- unless there's any other questions on subject matter jurisdiction. Let me see. One last point on the subject matter jurisdiction. There was never an evidentiary hearing requested, period. There was never? There was not an evidentiary hearing requested. There was oral argument set on the motion, and there was a ton of evidence before the court. That's why it was a factual dispute. But there was no request for an evidentiary hearing. And quite frankly, there's not dispute over the facts here. You can look- there's no dispute about what was in the cancellation proceeding. There's no dispute about what the testimony was. They denied some allegations in the complaint, but the court had moved well beyond that already and determined as a factual matter those pleadings at the cancellation proceeding were sufficient to put us under a real apprehensive of a lawsuit. Turning to the pending cancellation claim. Under Section 1119, a court has the authority to order cancellation of a trademark in any action- and this is a case where the court indisputably had jurisdiction over SEFCU's cancellation counterclaim for three years involving the case. There was non-infringement of their registered marks that were alleged, and also invalidity of their registered mark. So this case indisputably involved a registered mark. At that point, and there's no dispute between the parties and the court, at the outset of this case the court had jurisdiction to decide SEFCU's cancellation claim. Now, the court did two things. Number one, we had filed a motion for summary judgment that they should not be allowed to cancel our mark. That their cancellation claim should fail. At the same time, we filed a motion for summary judgment of non-infringement, and there was also a motion for summary judgment related to the validity of SEFCU's registered mark. The court essentially decided all of the summary judgment motions, except for the summary judgment motion related to the cancellation claim. And then at that point said, I no longer have jurisdiction over the cancellation claim. I don't think that can be a proper reading of the statute for many reasons. It shouldn't matter what order a court decides issues in as to whether it continues to maintain jurisdiction over the cancellation claim. Do you have a case that helps you with that? Can you cite that to me? Your Honors, I believe this is a case of first impression. I believe that no one has decided. It's not so unusual that a court would decide. Some claims are dependent upon others, right? And so the one claim gets knocked out, the other one falls. You just said the order of operation shouldn't matter. It frequently does. Well, but not with respect to whether the court has jurisdiction to decide the claim. I mean, certainly deciding claims in an order can affect other claims. If the dispute is not an issue, then that wipes out subject matter jurisdiction. I'm just trying to push back on your statement. It seems awfully broad to me that the order wouldn't affect the court's jurisdiction. It surely does if there's no longer a live controversy. Well, I don't think this is about whether there's a live controversy. There's still a live controversy about— Not if a claim gets knocked out and the other claim is dependent upon it. That's all I'm saying. Your statement seems to be very broad, and Judge Acuda has asked you to back it up. So that's what I'm looking for, counsel. Fair enough. I probably overstated that. Friday. Just take another run at it, okay? Because I don't think that's supportable. Sure. So in this instance, I think first we need to look at the interpretation of the statute. And jurisdiction under Section 119 is there in the action. The word that's used in the statute is the action. And in other contexts, action has been interpreted to mean the entire civil proceeding or the entire lawsuit. I'm not sure how the court—quite frankly, I'm not sure how the court interpreted the statute. And neither party argued that this was the proper interpretation of the statute at the district court level. This was something the court did sua sponte. And so, you know, the only cases that come to the conclusion that when there's a claim for a cancellation proceeding, the action has to involve a registered mark. And there are cases where if at the motion to dismiss stage the claims involving the registered mark get kicked out of the case, then the court concludes, look, I don't have separate jurisdiction over a Section 119 claim simply because someone tried to plead a cause of action involving a registered mark but failed. This was a case where, right, for years the court had jurisdiction over this claim. The parties have spent significant amounts of resources on this claim. The court was inclined—the district court was inclined to decide it but thought that it simply did not have continuing jurisdiction over that cancellation claim. And, Your Honors, I would submit that's an error. I think it's an improper reading of the statute. And, again, it is, I believe, a case of first impression. Okay. Thank you. Thank you. You have a few seconds left for rebuttal. Oh, you're on mute. Mr. Dan. Judge Okuda, in response to your question, SDCCU argued that the case was not moot after summary judgment of non-infringement because this court might render a future decision. And after that, SEFCU might then take action that would once again put in issue what they were raising. So that's it. 3 ER 568 we cited on page 14 of the opening brief. So there's no question but that there was—whatever might have been the situation before September 29, 2020, there was absolutely, even under their theory, any live controversy that drew in question this issue. As far as the counterclaim, the district court faithfully applied the Ayers-Aromatics case. This court has narrowly construed Section 37 of the Act in order to preserve USPTO jurisdiction to decide cancellation relief. And this court would be well to hold that USPTO proceedings are actions under Rule 13a2a. The only reason we're having this issue is that there's no authority that clearly says that an interparty's proceeding in the USPTO is something that excuses what would otherwise be a compulsory counterclaim under Rule 13a. So the district court was completely justified in saying that SEFCU should not be forced after having presented a claim to the USPTO because of a compulsory counterclaim to have to litigate that claim in a forum that it didn't want to be in. So I realize I'm over my time. I would just like to urge that, you know, ultimately at stake in this case, if this type of litigation is permitted to have, it severely burdens petitioning the USPTO for relief. There never was any, this issue of evidentiary hearing that's come up. When you have a pre-answer motion to dismiss, ordinarily the district court, if it's going to decide... Could you please wrap up, Mr. Dabney? Okay, I will wrap up. The orders that SDCCU is relying on, quote, unverified allegations of the complaint. Those allegations clearly are not a basis for entering a judgment on the merits and there is no admitted evidence that supports Article 3 jurisdiction or personal jurisdiction. And SEFCU's injury in this case would have been the same whether the registrant was in Alaska or Hawaii or anywhere else. So we very much believe that the court should affirm on the cross appeal and reverse with directions to dismiss the first, second, and fourth causes of action of a second amendment complaint. Thank you. We thank both sides for their argument. Citizens Equity First Credit Union versus San Diego County Credit Union is submitted. And the final case is James Manuel Rodriguez versus State Farm Mutual Automobile Insurance Company. That case is submitted. And with that, we're adjourned for this session and for the week. All rise.
judges: BEA, IKUTA, CHRISTEN